IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

GABRIEL H. GRADO,

      Plaintiff,

v.                                        CV 15-0573 LH/CG

VINCE HORTON, et al.,

      Defendants.

## AMENDED PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on Defendants' *Joint Objections* ("Objections"), (Doc. 34), filed on October 6, 2015, to this Court's *Proposed Findings and Recommended Disposition* ("PFRD"), filed on September 25, 2015, (Doc. 33). In its initial PFRD, the Court recommended construing Plaintiff's *Amended Complaint* ("Amended Complaint"), (Doc. 26), as a Motion for Leave to Amend and granting the same. (Doc. 33). The Court further recommended denying as moot Defendants' *Joint Motion to Dismiss* the Initial Complaint, ("Motion to Dismiss"), (Doc. 23), filed on August 14, 2015. Defendants' Objections assert that they should have been permitted time to oppose Plaintiff's filing an Amended Complaint, that the Amended Complaint is futile, and that their Motion to Dismiss should be granted. (*See generally* Doc. 34). In this Amended PFRD, the Court again construes Plaintiff's Amended Complaint as a Motion for Leave but also construes Defendants' Objections as a Response thereto and considers them herein. Based on review of the filings and relevant law, the Court **RECOMMENDS** that *Plaintiff's Amended Complaint*, (Doc. 26), construed as a Motion for Leave to Amend, be **DENIED**; that *Defendants' Joint Motion to Dismiss and*

*Memorandum of Law in Support* ("Motion to Dismiss") the Initial Complaint, (Doc. 23),

be **GRANTED**

## I.    Background

### a. Procedural History

On July 2, 2015, Defendant Blanca Zarate, removed this action from state court

and attached Plaintiff's state court *Complaint* ("Initial Complaint").  (Doc. 1, Ex. A; Doc 6,

Ex. A).[1]  On August 5, 2015, Plaintiff sought leave to amend the Initial Complaint.  (Doc.

19).  Because Plaintiff had requested leave to add allegations regarding exhaustion of

administrative remedies, which need not be pleaded, the Court construed Plaintiff's

motion "as a supplement to [his] Response (Doc. 15) to Defendant Zarate's Answer

(Doc. 7)."  (Doc. 22 at 1).  On August, 14, 2015, Defendants Horton and Zarate, who

were the only two Defendants at the time, filed a Motion to Dismiss the Initial

Complaint.[2]  Plaintiff, however, mistakenly believed that he had been granted leave to

amend the Initial Complaint and subsequently filed an Amended Complaint on

September 14, 2015.  (Doc. 26 at 1).

On September 25, 2015, the Court entered a PFRD recommending that Plaintiff's

Amended Complaint be construed as a Motion for Leave to Amend and be granted.

(Doc. 33 at 2).  The Court further recommended denying as moot Defendants' Motion to

Dismiss the Initial Complaint.  On October 6, 2015, Defendants filed their Objections.

(Doc. 34).  In their objections, Defendants assert that the Amended Complaint was

improperly filed and that they should have been given an opportunity to demonstrate as

---

[1] The attachment to the Notice of Removal omitted the second page of the Initial Complaint.  (Doc. 1, Ex. A).  The Notice filed shortly thereafter, however, contains the entire Initial Complaint.  (Doc. 6, Ex. A).  As such, the Court will cite to the Notice, (Doc. 6), rather than the Notice of Removal, (Doc. 1).

[2] The Joint Motion to Dismiss was also filed on behalf of the Guadalupe County Correctional Facility ("GCCF").  However, GCCF was dismissed *sua sponte* the same day by Judge Hansen.  (Doc. 24).

much before the Court recommended that Plaintiff's Amended Complaint become the operative complaint.  (Doc. 34 at 4).  The Court agrees.  As such, the Court construes Plaintiff's Amended Complaint as a Motion for Leave to Amend and Defendants' Objections as a Response in which they assert the Motion should be denied on futility grounds and considers their arguments herein.

   b.  *Plaintiff's Claims*

Plaintiff's Initial Complaint names Blanca Zarate, a prison guard, and Vince Horton, the Warden of the Guadalupe County Correctional Facility ("GCCF"), as Defendants.[3]  Under the caption "Nature of the Action," Plaintiff asserts that the Defendants, acting in their individual capacities, violated Plaintiff's First, Fifth, Eight, and Fourteenth Amendment rights.  (Doc. 6, Ex. A at 1).

Plaintiff's Amended Complaint names Defendant Zarate and Defendant Horton and adds the following defendants: (1) Phil Aragon, Chief of Security; (2) H. Rodgers, a correctional officer; (3) GEO Group, Inc. ("GEO), the company that operates GCCF; and (4) Gregg Marcantel, Secretary of Corrections for the New Mexico Department of Corrections.  (Doc. 26 at 2-3).  Each of the six Defendants is sued in their individual capacity for alleged violations of Plaintiff's First, Fifth, Eight, and Fourteenth Amendment rights, the Prison Rape Elimination Act ("PREA"), and GEO and New Mexico Correction Department ("NMCD") policies.  (*Id.*).

   c.  *Factual Background*

Since Plaintiff incorporates the entire fact section of his Initial Complaint into his Amended Complaint, (Doc. 26 at 3, 11), the Court will review the facts contained in the

---

[3] Judge Hansen construed Plaintiff's naming GCCF in the caption as attempting to bring claims against that entity.  The claims against GCCF were dismissed on August 14, 2015.  (Doc. 24 at 2).

two complaints in tandem.  *See* Fed. R. Civ. P. 10(c) ("A statement in a pleading may be adopted by reference . . . in any other pleading or motion.").

Plaintiff's Initial Complaint alleges that on or about January 5, 2015, at around 3:00 or 4:00 p.m., he was ordered to report to the Disciplinary Office of the GCCF. (Doc. 6, Ex. A at ¶ 7).  Upon entering the office, Defendant Zarate approached Plaintiff, "backed him into the door and began kissing him very aggressively."  (*Id.* at ¶ 9).  Defendant Zarate then ran her hands under Plaintiff's shirt and into his pants, "grabbed Plaintiff's genitals[,] and then stroked his penis several times."  (*Id.* at ¶ 10).  Plaintiff alleges that, upon realizing Plaintiff's discomfort, Defendant Zarate "backed away and said, 'Was that bad, you know I've liked you?'"  (*Id.* at ¶ 11).  Plaintiff, "unsure what to say or do," left the office and returned to his assigned unit.  (*Id.* at ¶ 12).

Plaintiff filed a criminal complaint with the New Mexico State Police on January 23, 2015.  (*Id.* at ¶ 18).  He believes Defendant Zarate quit on January 26, 2015, after being confronted with the report Plaintiff filed with the police.  (*Id.* at ¶ 19).  Plaintiff also believes that Defendant Zarate had engaged in prior sexual misconduct at another prison facility in New Mexico, and that Defendant Horton "had prior knowledge of them [sic] offenses or allegations."  (*Id.* at ¶ 20).

Plaintiff's Amended Complaint does not expand on the factual allegations regarding the assault.  Rather, the Amended Complaint addresses alleged retaliation for Plaintiff's reporting the assault.  Plaintiff avers that he "made [a] complaint" to Rebecca Chavez ("Chavez"), a Mental Health Provider at GCCF and "the one person within [GCCF] . . . that he trusted."  (Doc. 26 at ¶ 18).  Chavez "then made the report to her

supervisor Mental Health Director, K. Esquibel." (*Id.* at ¶ 19).  When exactly the complaint was made and the report was produced is unclear.

To exhaust his administrative remedies, Plaintiff filed an informal complaint on January 29, 2015, regarding Defendant Zarate's conduct.  (*Id.* at ¶ 22).  He met with Defendant Aragon on February 3, 2015, to address the informal complaint.  (*Id.*).  Defendant Aragon, "acted as if he were concerned about Plaintiff's well-being, explained the investigation would be handled by NMCD and that Defendant Zarate was reassigned" so their "paths should not cross while the matter . . . was being investigated."  (*Id* at ¶ 25).  Plaintiff alleges that this behavior was deceptive because, after Plaintiff signed the informal complaint, Defendant Aragon marked a box on the complaint indicating that the matter had been resolved.  (*Id.* at ¶ 27).  Plaintiff requested that Defendant Aragon change the form to reflect that the matter had not been resolved, but Defendant Aragon refused.  (*Id.*).  Plaintiff then stated that Defendant Aragon was "violating Plaintiff's First Amendment Right and due process," to which Defendant Aragon replied, "Have a good day, Mr. Grado."  (*Id.* at ¶¶ 28-29).

Later the same day, Plaintiff was on his way to meet with Chavez to discuss Defendant Aragon's actions when he crossed paths with Defendant Rodgers. (*Id.* at ¶ 31).  The two had an exchange during which Defendant Rogers accused Plaintiff of lying and being a snitch.  (*Id.* at ¶¶ 32-37).  Upon hearing this exchange, Chavez and another officer came out of their offices to see what was going on.  (Doc. 26 at ¶ 38-40). Chavez and Plaintiff then went to Esquibel's office where Plaintiff explained what had just happened with Defendant Rogers, as well as Defendant Aragon's handling of the informal complaint.  (*Id.* at ¶ 42).

Esquibel, with Plaintiff and Chavez present, called Defendant Aragon on speaker phone. (*Id.* at ¶ 44). Defendant Aragon explained that he marked the complaint resolved "due to the investigation being turned over to NMCD." (*Id.* at ¶ 45). The informal complaint reflects that Defendant Aragon wrote, "NMCD has assigned the investigation to an NMCD Investigator. In the event that the investigator does not investigate, this will be reopened as a formal grievance on Feb-16-2015." (*Id.*, Ex. E). Defendant Aragon allegedly also stated that Plaintiff failed to request relief in his complaint and had he done so there would be a reason to proceed with the grievance process. (*Id.* at ¶ 46). Plaintiff stated to Chavez and Esquibel with Aragon listening over the speaker that Defendant Aragon was worried about Plaintiff suing them and "then stated to Defendant Aragon 'That's bull-shit, Aragon, . . . you don't request relief until you file a formal grievance, which I can't do if you mark my informal complaint as resolved." (*Id.* at ¶ 47-48). Defendant Aragon then instructed Esquibel to pick up the phone and ended the conversation. (*Id.* at ¶¶ 49-50). Plaintiff requested that Esquibel and Chavez document the incidents with Defendant Aragon and Defendant Rogers "as a form of retaliation for filing a sexual abuse report on Defendant Zarate." (*Id.* at ¶ 51). A "log" was made and put into Plaintiff's mental health records. (*Id.* at ¶ 52).

In the evening of the same day, February 3, 2015, Plaintiff was given an original copy of his informal complaint by Lieutenant Rivera ("Lt. Rivera") and asked to sign. (*Id.* at ¶ 53). Plaintiff noted that Defendant Rogers signed the form on the "staff witness" line, indicating that she had "be[en] present to the meeting with [sic] Plaintiff and Defendant Aragon." (*Id.* at ¶ 54). Plaintiff asserts that she had not been present during that meeting. (*Id.* at ¶ 55). Plaintiff signed the informal complaint "quoting 'This issue is

not resolved.'" (*Id.* at ¶ 56). Presumably, Plaintiff verbally communicated that the issue was not resolved because no such statement is reflected on the informal complaint that he attached to his Initial Complaint. (*See* Doc. 26, Ex. E).

Also on February 3, 2015, Plaintiff drafted a letter to the "PREA Coordinator" in which he asserted that Defendant Aragon had mishandled his informal complaint and that Defendant Rogers had not been present during Plaintiff's and Defendant Aragon's meeting. (*See id.*, Ex. F).

The next day, when Plaintiff attempted to give the letter to Chavez to deliver to the PREA Coordinator, Chavez informed him that "she was given strict orders to have no more communication or contact with said Plaintiff in regards to the PREA investigation nor [sic] in any other matter for the fact." (*Id.* at ¶ 59-60). Plaintiff avers, "[u]pon information and belief, these orders given to [Chavez] were handed down by or given directly by Defendant Horton." (*Id.* at ¶ 61). Chavez nevertheless agreed to give the letter to Esquibel to deliver.

On February 5, 2015, Plaintiff was "ambushed" by four officers and instructed by Lieutenant Gallegos that he would be transported to another facility. (*Id.* at ¶ 63-65). Plaintiff alleges he did not receive a transfer hearing or that the required 48-hour notification, which, he asserts, demonstrates Defendant Horton's "manipulation of the transfer system." (*Id.* at ¶ 66).

As for the investigation, Plaintiff states that it "was conducted by Office of Professional Standards Agent, Jason A. Hunt, who forwarded his outcome of the investigation . . . to PREA Coordinator, Julian Shane, who then forwarded a copy of the decision to Plaintiff on about or around June 17, 2015." (*Id.* at ¶ 71 (citing to Doc. 19 at

8-11)).  Hunt's investigation was "inconclusive" and found that "that no clear evidence proved or disproved Defendant Zarate sexually assaulted Plaintiff."  (*Id.* at ¶ 72). Plaintiff appealed the decision to NMCD and Defendant Marcantel on June 22, 2015. (*Id.* at ¶ 73).  As of September 14, 2015, however, he had not yet received a response. (*Id.*).

## II.    Standard of Review

Where, as here, a plaintiff is outside of the time frame for amending the complaint as of right, the plaintiff must either obtain written consent from the opposing party or leave from the court to file an amended complaint.  FED. R. CIV. P. 15(a)(1). "The court should freely give leave when justice so requires."  FED. R. CIV. P. 15(a)(2). However, "[a] court properly may deny a motion for leave to amend as futile when the proposed amended complaint would be subject to dismissal for any reason," such as for failure to state a claim.  *Bauchman for Bauchman v. W. High School*, 132 F.3d 542, 562 (10th Cir. 1997).  Thus, to avoid having a motion to amend denied on futility grounds, the amended complaint must be able to survive a Rule 12(b)(6) motion.

To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain allegations of fact that, taken as true, "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "[A] formulaic recitation of the elements of a cause of action" will not suffice to state a claim.  Id.  While the court must accept as true all of the factual allegations in the complaint, the court need not grant the same deference to conclusory statements.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inferences that the defendant is liable for the misconduct

alleged." *Iqbal*, 556 U.S. at 680. "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (citations omitted). Where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile, dismissal with prejudice is appropriate. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).

The Court is mindful that it must construe the filings of a *pro se* litigant liberally. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be a *pro se* litigant's advocate. *Id.* In other words, "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Id.* The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations omitted). In addition, Plaintiff, as a *pro se* litigant, must follow the same procedural rules that govern other litigants. *Nielson v. Price,* 17 F.3d 1276, 1277 (10th Cir.1994).

### III.    Analysis

Plaintiff alleges violations of various constitutional rights, prison policies, and PREA against various Defendants. (Doc. 26 at ¶¶ 80-85). The Court will address Plaintiff's claims against each of the Defendants is addressed in turn.

#### a.  Defendant Zarate

Plaintiff alleges that Defendant Zarate violated the Prison Rape Elimination Act and Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment

when she sexually assaulted him.  At the outset, the Court notes that numerous district courts have concluded that the Prison Rape Elimination Act ("PREA"), 42 U.S.C. § 15601 *et seq.*, does not create a private right of action.  *Moorman v. Herrington*, No. 4:08CV–P127–M, 2009 WL 2020669, at *2 (W.D. Ky. July 9, 2009) (unpublished) (collecting cases). Plaintiff's attempt to sue under PREA fails accordingly.[4]

This leaves Plaintiff's Eighth Amendment claim against Defendant Zarate.  "[T]he unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment."  *Hudson v. McMillian*, 503 U.S. 1, 5 (1992).  In the context of forceful contact, two prongs inform the question of what constitutes cruel and unusual punishment: "(1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the officials act[ed] with a sufficiently culpable state of mind."  *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003) (quotation marks omitted).  In the context of sexual abuse by a corrections officer against a prisoner, the second prong is easily established because such abuse serves no "legitimate penological purpose" and "the conduct itself constitutes sufficient evidence that force was used maliciously and sadistically for the very purpose of causing harm."  *Id.* at 1212-13 (quotation marks omitted).  The analysis, therefore, turns on whether the conduct was objectively harmful enough to constitute cruel and unusual punishment.

"The objective component of an excessive force claim is 'contextual and responsive to contemporary standards of decency.'"  *Id.* at 1212.  As such, the requisite

---

[4] For this reason, Plaintiff's PREA claims against all of the Defendants should be dismissed and the Court will not further address them herein.

degree of harm giving rise to an Eighth Amendment claim fluctuates over time.

Contemporary standards dictate that rape of a prisoner by a prison employee is

unequivocally objectively harmful enough to constitute cruel and unusual punishment.

*Id.* (holding objective prong met where a prison employee forced the plaintiff prisoner "to

expose herself to him and . . . raped her on several occasions").  This case raises the

issue of whether sexual assault that does not constitute rape constitutes cruel and

unusual punishment.

To be sure, "[s]exual abuse . . . can cause severe physical and psychological

harm."  *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997).  However, not "every

malevolent touch by a prison guard gives rise to a federal cause of action.  The Eighth

Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from

constitutional recognition *de minimis* uses of physical force, provided that the use of

force is not of a sort 'repugnant to the conscience of mankind.'"  *Hudson*, 503 U.S. at 10

(citation omitted).  The Seventh Circuit recently concluded that "[s]exual offenses

forcible or not are unlikely to cause so little harm as to be adjudged *de minimis*, that is,

too trivial to justify the provision of a legal remedy[,] . . . [as] [t]hey tend . . . to cause

significant distress and often lasting psychological harm."  *Washington v. Hively*, 695

F.3d 641, 643 (7th Cir. 2012) (holding plaintiff stated an Eighth Amendment claim where

he alleged that a prison guard fondled the plaintiff's genitalia for several seconds both

over plaintiff's clothing during a pat down and then while nude during a subsequent strip

search).  The Second Circuit has likewise very recently "recognize[d] that sexual abuse

of prisoners, once passively accepted by society, deeply offends today's standards of

decency."  *Crawford v. Cuomo*, 796 F.3d 252, 254 (2d Cir. 2015) (holding plaintiff stated

an Eighth Amendment claim where he alleged that a prison guard told plaintiff that "he was going to make sure [plaintiff] did not have an erection" and then "fondle[d] and squeeze[d]" plaintiff's penis).

However, the leading Tenth Circuit case, an unpublished decision decided fifteen years ago, established that whether sexual misconduct gives rise to an Eighth Amendment claim depends on the conduct in question. *Joseph v. U.S. Fed. Bureau of Prisons*, No. 00-1208, 232 F.3d 901, 2000 WL 1532783 (10th Cir. Oct. 16, 2000) (unpublished).[5] Under *Joseph*, "severe or repetitive sexual abuse of an inmate by a prison officer can be objectively, sufficiently serious enough to constitute an Eighth Amendment violation." *Boddie*, 105 F.3d at 861 (quotation marks omitted) *cited with approval in Joseph*, 2000 WL 1532783 at *2.[6] In *Joseph*, a female prison employee "touched [the male plaintiff] several times in a suggestive manner and exposed her breasts to him." *Id.* at *1. The court held that the harm caused by such conduct was not of constitutional dimensions. Applying *Joseph*, district courts in the Tenth Circuit have found even more egregious conduct insufficient to constitute an Eighth Amendment Claim. *See, e.g., Hurtado-Melero v. Cornell Corrs. of Texas, Inc.*, No. 1:10-cv-0103-JAP-CG (D.N.M. Oct. 26, 2010) (unpublished) (plaintiff failed to state an Eighth Amendment claim where she alleged that prison officer isolated her for several hours during which he repeatedly propositioned plaintiff for intercourse, "deliberately and forcefully" touched her breasts with his right arm, repeatedly demanded that plaintiff show him her breasts and "pull down her panties" so that plaintiff "was forced to lift her

---

[5] "Unpublished decisions are not precedential, but may be cited for their persuasive value." 10th Cir. R. 32.1(A).

[6] Nearly twenty years after *Boddie*, 105 F.3d 857 (2d Cir. 1997), was decided, the Second Circuit all but overruled that decision in *Crawford*, 796 F.3d 252 (2d Cir. 2015). In *Crawford*, conduct that was much less egregious that what had occurred in *Boddie* was found to be sufficient to state an Eighth Amendment claim. *Id.* at 254.

shirt three [or] four times" and "expose her genitals to [the defendant]", "gratified himself when [plaintiff] exposed herself to him as demanded"; and, at some point, pressed his body against hers); *Escobar v. Reid*, 668 F. Supp. 2d 1260, 1274 (D. Colo. September 17, 2009) (allegations that prison officer "grabbed Plaintiff's buttocks[,] made tasteless jokes about having sex with Plaintiff . . . [and] belittled Plaintiff's faith" insufficient to state an Eighth Amendment claim); *Williams v. Anderson*, No. Civ. A. 03-3254-CM, 2004 WL 2282927, at *3 (D. Kan. Sept. 7, 2004) (allegations that prison officer "grabbed [plaintiff's] buttocks from behind in a sexual manner and exposed his penis to plaintiff" insufficient to state an Eighth Amendment claim).

Here, Plaintiff alleges that Defendant Zarate violated his Eighth Amendment right to be free from cruel and unusual punishment when she lured him into an office, forcibly kissed him, ran her hands under his shirt and into his pants, stroked his penis several times, and then asked, "Was that bad, you know I've liked you?" (Doc. 6, Ex. A at ¶ 11). Such conduct is sufficiently analogous to the circumstances of *Joseph* and the progeny of *Joseph* to dictate that it does not rise to an Eighth Amendment violation. This is not to say that the allegations are not disturbing. Indeed, "episodes of harassment and touching . . . are despicable, and, if true, they may potentially be the basis of state tort claims. But they do not involve a harm of federal constitutional proportions as defined by the Supreme Court." *Boddie*, 105 F.3d at 862. Therefore, Plaintiff's allegations against Defendant Zarate fail to state an Eighth Amendment claim.

### b.  Defendant Horton

Plaintiff asserts that Defendant Horton, as GCCF's Warden, should be held liable for Defendant Zarate's actions.  Plaintiff alleges that Defendant Horton knew of prior "offenses or allegations" of sexual misconduct by Defendant Zarate at another facility before she became employed at GCCF.  (Doc. 6, Ex. A at 3).  However, "[i]n a § 1983 suit . . . the term 'supervisory liability' is a misnomer.  Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."  *Iqbal*, 556 U.S. at 677.  Thus, to establish a claim against Defendant Horton, as the Warden, Plaintiff must demonstrate (1) some personal involvement by a supervisor that (2) caused the complained of constitutional harm, and (3) that the supervisor "acted with the state of mind required to establish the alleged constitutional deprivation."  *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013); *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 768-69 (10th Cir. 2013).  Inherently, an underlying constitutional violation is required to impose liability.  The Court, however, has already proposed finding that Plaintiff failed to state an Eighth Amendment claim against Defendant Zarate.  Because Defendant Horton cannot be said to have caused a constitutional harm where none occurred, the Court further recommends dismissing the "supervisory liability" claim against him.

Plaintiff also alleges that Defendant Horton retaliated against Plaintiff in violation of PREA, prison policies, and the First, Fifth, and Fourteenth Amendments when he allegedly directed Chavez to cease speaking to Plaintiff and transferred Plaintiff without following the appropriate procedures.  (Doc. 26 at ¶¶ 60-61, 66, 82).

As to Plaintiff's allegations of violations of prison policies such allegations can be read as (1) attempting to bring a breach of contract claim and/or (2) supporting his allegations of constitutional violations.  As to the first reading, because the Court recommends dismissing all of the prospective federal claims in the Amended Complaint, the Court also recommends refusing to exercise supplemental jurisdiction over this prospective state law claim.  *Franklin v. Kansas Dep't of Corrs.*, No. 05–3166, 160 Fed. Appx. 730, 736 (10th Cir. Dec. 23, 2005) (unpublished) (affirming refusal to exercise jurisdiction over breach of contract claim by prisoner as purported third-party beneficiary to certain prison contracts).[7]  As to the second reading, prison policies do not dictate the standards by which constitutional rights are violated.  *See, e.g., Marquez v. City of Albuquerque*, 399 F.3d 1216, 1222 (10th Cir. 2005) ("[V]iolations of state law and police procedure generally do not give rise to a 1983 claim for excessive force") (quotation marks omitted).

With respect to the alleged constitutional violations, Plaintiff asserts that, after he filed complaints regarding Defendant Zarate, Defendant Horton directed Chavez, a mental health staff member, to stop speaking to Plaintiff and also had Plaintiff transferred without following the appropriate procedures.  To state a retaliation claim, a plaintiff must allege facts demonstrating:

---

[7] To the extent Plaintiff's Amended Complaint can be read as attempting to bring a breach of contract claim against any of the Defendants, the Court likewise recommends that supplemental jurisdiction be refused.  As such, Plaintiff's Amended Complaint remains futile. *Bauchman*, 132 F.3d at 562 ("A court properly may deny a motion for leave to amend as futile when the proposed amended complaint would be subject to dismissal for any reason . . .").

> (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Allen v. Avance*, No. 11–6102, 491 Fed. Appx. 1, 6 (10th Cir. July 10, 2012) (unpublished) (quoting *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007)). The Tenth Circuit has "found that officials may not retaliate against prisoners for filing administrative grievances." *Id.* (citing *Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991)). Plaintiff's similar conduct of lodging an informal complaint with the prison and reporting the conduct to Chavez are therefore protected activities.

However, the Court cannot reasonably infer that Defendant Horton's alleged actions would "chill a person of ordinary firmness" from continuing to file grievances regarding the alleged sexual assault. The Tenth Circuit has noted that "standard of a person of ordinary firmness is a vigorous standard." *Eaton v. Meneley*, 379 F.3d 949, 956 (10th Cir. 2004). The standard is "objective, rather than subjective" and "a trivial or de minimis injury will not support a retaliatory prosecution claim." *Id.* at 955-56 (quotation marks omitted). Defendant Horton's alleged order to Chavez to not talk to Plaintiff is simply insufficient to deter a person of ordinary firmness. This is especially true since Plaintiff did not allege that he was deprived of access to all mental health providers. Similarly, because Plaintiff has not alleged any facts establishing that the conditions at the prison to which he was being transferred were somehow worse than GCCF's, these allegations are insufficient as well. *See Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010) (finding plaintiff stated a claim where he alleged he was being transferred to an out-of-state supermax prison for, among other things, filing grievances

against defendants); *see also Gandy v. Barber*, No. 12–cv–03331–MSK–MJW, 2014 WL 6853952, at *4 (D. Colo. Dec. 5, 2014) (unpublished) (holding alleged retaliatory transfer insufficient to dissuade a person of reasonable firmness from filing grievances where no evidence presented that transfer would result in significant disruption to prisoner).  As such, Plaintiff's First Amendment claims against Defendant Horton also fail.

 *c.  Defendant Aragon*

 Plaintiff asserts that Defendant Aragon violated PREA, prison policies, and the First and Fourteenth Amendments when he mishandled Plaintiff's informal complaint against Defendant Zarate.  Specifically, Plaintiff alleges that Defendant Aragon marked his informal complaint as "resolved," thereby precluding him from further pursuing his administrative remedies and refused to change the complaint after Plaintiff requested that he do so.  (Doc. 26 at ¶ 27-29).

 As to Plaintiff's Fourteenth Amendment claim, "prison grievance procedures do not 'give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment . . . [and] [t]he failure to respond to . . . grievances d[oes] not impose an atypical and significant hardship in relation to the ordinary incidents of prison life . . . .'"  *Murray v. Albany Cnty. Bd. of Cnty. Comm'rs*, No. 99-8025, 211 F.3d 1278, 2000 WL 472842, at *2 (10th Cir. Apr. 20, 2000) (unpublished) (quoting *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) and citing *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995)).  Therefore, Plaintiff's Amended Complaint , which complains of a failure to follow prison grievance procedures, fails to state a Fourteenth Amendment claim.

Furthermore, Plaintiff's allegations that Defendant Aragon marked his informal complaint as resolved and refused to change it are inadequate to state a First Amendment claim.  To begin, the alleged conduct of checking the wrong box is insufficient to chill a person of ordinary firmness from further pursuing the grievance process.  *See Green v. Snyder*, No. 12–1366, 525 Fed. Appx. 726, 730 (10th Cir. May 14, 2013) (unpublished) ("[F]ailure to provide the grievance forms in a timely fashion would not chill a person of ordinary firmness from continuing to file grievances.").

Additionally, Plaintiff's allegations do not establish that the alleged retaliatory motive was a "but for" cause of Defendant Aragon marking the matter resolved. Instead, the Amended Complaint demonstrates that Defendant Aragon checked resolved because the matter had been referred to the NMCD for an investigation.  (Doc. 26 at ¶ 45).  Defendant Aragon also left open the possibility for Plaintiff to pursue the grievance process when he wrote on the informal complaint, "NMCD has assigned the investigation to an NMCD investigator.  In the event that the investigator does not investigate[,] this will be reopened as a formal grievance on Feb-16-2015."  (*Id.*, Ex. E). As a result, Plaintiff's allegations do not give rise to a reasonable inference that Defendant Aragon acted with the requisite retaliatory motive.  *Smith v. Maschner*, 899 F.2d 940, 949-50 (10th Cir. 1990) (requiring a plaintiff to "prove that 'but for' the retaliatory motive, the incidents to which he refers . . . would not have taken place."). For the above reasons, Plaintiff's Amended Complaint fails to state a First Amendment claim against Defendant Aragon.

### d. Defendant Rogers

Plaintiff asserts that Defendant Rogers violated PREA, prison policies, and the First and Fourteenth Amendments when she fraudulently signed as a witness on Plaintiff's informal complaint.  Plaintiff also alleges that Defendant Rogers called Plaintiff a liar and a snitch after Plaintiff filed his informal complaint.  (*Id.* at ¶¶ 32-37).  These allegations are insufficient to state a First or Fourteenth Amendment a claim for the same reasons that the allegations against Defendant Aragon are insufficient: the alleged conduct would not chill a person of ordinary firmness and violations of prison grievance policies do not give rise to a protected liberty interest.  *See Green,* 525 Fed. Appx. at 730; *Murray*, 2000 WL 472842 at *2.

### e. Defendant GEO

Plaintiff asserts that GEO is liable for failing to train its employees.  To hold GEO liable as a municipal entity requires first determining that one of its employees committed a constitutional violation.[8]  *Myers v. Oklahoma Cnty. Bd. of Cnty. Com'rs*, 151 F.3d 1313, 1315 (10th Cir. 1998) ("A plaintiff suing a municipality under section 1983 for the acts of one of its employees must prove: (1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation.").  Because the Court has found that Plaintiff has failed to state a claim for a constitutional violation against any of the named Defendants, the claims against GEO fail as well.

---

[8] "Private corporations acting under color of state law may, like municipalities, be held liable for injuries resulting from their policies and practices."  *Rice ex. re. Rice v. Corr Medical Services*, 675 F.3d 650, 675 (7th Cir. 2012); *Giron v. Corrs.Corp. of America*, 14 F. Supp. 2d 1245, 1250 (D.N.M. Mar. 18, 2008) ("[C]onclud[ing] that the government function doctrine applies in New Mexico when the state delegates the running of a prison to a private contractor.").

    *f.  Defendant Marcantel*

Plaintiff asserts that Defendant Marcantel, Secretary of the New Mexico Department of Corrections, is liable for failing to respond to his appeal of the NMCD investigation outcome. However, as noted above, prison grievance policies do not give rise to a protected liberty interest.  *Murray*, 2000 WL 472842 at *2.

Plaintiff also asserts an Eighth Amendment claim against Defendant Marcantel. No factual basis on which such a claim could be predicated exists because Plaintiff does not allege any personal involvement by Defendant Marcantel.  *Pahls*, 718 F.3d at 1225; *Schneider*, 717 F.3d at 768-69 (requiring personal involvement for a supervisor to be held liable under ¶ 1983).  As such, the claims against Defendant Marcantel fail.

**IV.   Conclusion**

    In this Amended PFRD, the Court has construed Plaintiff's Amended Complaint, (Doc. 26), as a Motion for Leave to Amend, and Defendants' Objections, (Doc. 34), to the previous PFRD, (Doc. 33), as a response asserting that leave to amend should be denied on futility grounds.  Had Plaintiff filed a response to the objections, the Court would have construed it as a reply.  In any event, Plaintiff will have an opportunity to respond to Defendants' arguments in his objections to this PFRD, should he choose to file any.  With this procedural posture in mind and for the reasons outlined in this PFRD, the Court finds that Plaintiff's Amended Complaint, which incorporates the factual allegations in his Initial Complaint, (Doc 6, Ex. A), fails to state a claim for relief under federal law.  Therefore, the Motion for Leave to Amend (Doc. 26) should be denied. Furthermore, because the Amended Complaint incorporates all of the factual allegations

of the Initial Complaint, yet still fails to a state claim, Defendants' Joint Motion to

Dismiss the Initial Complaint should be granted.

**IT IS THEREFORE RECOMMENDED** that *Plaintiff's Amended Complaint*, (Doc.

26), construed as a Motion for Leave to Amend, be **DENIED**; that *Defendants' Joint*

*Motion to Dismiss and Memorandum of Law in Support* ("Motion to Dismiss") the Initial

Complaint, (Doc. 23), be **GRANTED**; and that Plaintiff's federal claims in the Initial

Complaint be **DISMISSED WITH PREJUDICE**.[9]

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE

---

[9] Because the Court recommends declining to exercise jurisdiction over the prospective state claims in the Amended Complaint, this PFRD expresses no opinion on the merits of those claims nor does it recommend that they be dismissed with prejudice.  In other words, Plaintiff is not precluded from pursuing legal recourse in a state court applying state law.